James W. Witherspoon and Elizaberth Witherspoon v. Commissioner.
Witherspoon v. Commissioner
Docket No. 6618-66.
United States Tax Court
T.C. Memo 1969-62; 1969 Tax Ct. Memo LEXIS 234; 28 T.C.M. (CCH) 359; T.C.M. (RIA) 69062; March 31, 1969, Filed *234 Earnest L. Langley, 140 E. Third St., Hereford, Tex., for the petitioners. Daniel A. Taylor, Jr., for the respondent. DAWSON
Memorandum Findings of Fact and Opinion DAWSON, Judge: Respondent determined a deficiency in petitioners' income tax for the year 1963 in the amount of $22,173.69. Certain agreements and concessions with respect to several issues have been made by the parties in their stipulation of facts. In addition, respondent has conceded in his original brief that petitioners are entitled to deduct as a business bad debt in 1963 the amount of $23,000 in advances that James W. Witherspoon, as an individual, made to Hereford Tile and Brick Company, Inc. This concession is based upon the fact that James W. Witherspoon was engaged in the business of lending money for profit in 1963. The agreed and conceded adjustments can be given effect in the Rule 50 computation. The single question remaining for our consideration and decision is whether petitioner James W. Witherspoon is entitled to a business or nonbusiness bad debt deduction with respect to advances of $52,600 made in 1963 to Hereford Tile and Brick Company, Inc. The answer to this question depends *235 upon whether the advances were made by the partnership of Witherspoon and Couch or by James W. Witherspoon individually. Findings of Fact Some of the facts have been stipulated and are found accordingly. Facts pertinent to the issue in controversy are set out below. James W. Witherspoon (herein called petitioner) and Elizabeth Witherspoon are husband and wife whose legal residence was Hereford, Texas, at the time their petition was filed in this case. They filed a joint Federal income tax return for the year 1963 with the district director of internal revenue at Dallas, Texas. Petitioner is a practicing attorney. He completed his law school education and was licensed to practice as an attorney in the State of Texas in 1929 and since that time has maintained an office in Hereford, Texas, where he continuously practiced law at all times material herein. In 1957 and prior to the death of petitioner's then wife, Margaret Witherspoon (herein called Margaret), Hereford Tile and Brick Company, Inc., a corporation (herein called Brick Company), was organized. On October 16, 1957, the date of Margaret's death, petitioner and 360 Margaret owned as community property 11,200 shares *236 of Brick Company stock, valued at $2,000. Pursuant to the provisions of Margaret's will, her estate was placed in trust for the benefit of Irene Witherspoon Couch, the daughter of petitioner and Margaret, including Margaret's community share of the Brick Company stock. According to the trust provisions, the trust would be dissolved and its assets distributed to Irene after she reached her 25th birthday on January 17, 1963. After Margaret's death and the creation of the trust, petitioner and the trust formed an equal partnership known as the James W. Witherspoon and Margaret Witherspoon Trust Partnership. When Irene attained the age of 25 years, the partnership continued as Witherspoon and Couch (herein called the partnership). Petitioner was one of the organizers of Brick Company. He has invested $11,700 in the company. He has made sizeable direct loans to the company. He has guaranteed loans for the company. Since 1964 the company has paid him legal fees totaling $625.59. As of the end of 1962, when the partnership owned 22,688 shares of Brick Company stock, it sold 20,000 shares at a profit which was reported on the partnership return as a capital gain. Irene received one-half *237 of this gain. As of July 31, 1963, the partnership's books and records reflected that a total of $52,600 had been advanced to Brick Company, of which $46,100 thereof was posted to "accounts receivable" and $6,500 thereof was posted to "notes receivable." In addition to these amounts, petitioner personally advanced the following amounts to Brick Company: $10,000 on March 12, 1963; $5,000 on June 26, 1963; $2,000 on July 3, 1963; and $6,000 on July 8, 1963. According to the books and records of the partnership, an adjusting entry was made under date of December 31, 1963, whereby Brick Company stock, with a basis of $594.42, was transferred from the partnership account to petitioner's personal account. According to the books and records of the partnership, an undated adjusting entry was made to "accounts receivable" from Brick Company transferring $58,975 of advances from the partnership's account to petitioner's personal account. This entry was as of the close of 1963, but was made sometime after December 31, 1963, probably in January or February 1964. An additional amount of $12,875 shown under "accounts receivable" as an advance on November 30, 1963, was a payment made by petitioner *238 to relieve himself from liability as a guarantor of loans made to Brick Company. The $12,875 was allowed by respondent as a business bad debt. These advances were made with partnership funds with the understanding that they were advances made by the partnership to petitioner, and that they were not loans or advances made by the partnership for itself. The advances were not taken as losses by the partnership on a partnership tax return. There was no attempt to allocate the losses against the capital account of petitioner in the partnership. The amounts were treated as drawings by petitioner out of partnership assets, to be accounted for by him individually, without reference to the profits or losses of the partnership. Several notes evidencing the advances were made payable to petitioner individually and not to the partnership. All of the advances made to Brick Company through the partnership were repaid to the partnership by petitioner. Petitioner was in the business of lending money for profit in 1963. On his 1963 Federal income tax return petitioner claimed a deduction for a business bad debt as to Brick Company in the total amount of $81,975, consisting of $46,100, $23,000, *239 and $12,875. In his notice of deficiency respondent disallowed the claimed business bad debt deduction to the extent of $69,100 and allowed petitioner a nonbusiness bad debt deduction of $49,300, consisting of petitioner's one-half share of $52,600 (including the $6,500 inadvertently omitted from the return) and the $23,000. Ultimate Findings 1. The loans to Brick Company in the amount of $52,600 during the year 1963 were made by the petitioner and not by the partnership. 2. Petitioner is entitled to a business bad debt deduction for the loans of $52,600 made to Brick Company in 1963. Opinion The parties agree that the advances were debts which became worthless in 1963; 361 that loans made by the petitioner individually are entitled to business bad debt treatment; and that the partnership was not in the business of making loans. Therefore, we are presented with the narrow question of whether the advances to Brick Company were made by the partnership, resulting in losses to it which were distributed to the partners, or whether the advances were in fact made by petitioner, by means of withdrawals made by him from partnership assets, for which he accounted to the partnership. *240 The question is entirely factual. Respondent argues that the advances were made by the partnership, while petitioner argues that, in fact and in substance, the advances were made to Brick Company by him. We agree with petitioner. Our ultimate findings of fact are dispositive of the issue. Contrary to respondent's contention, we think petitioner has carried his burden of proving by a preponderance of the evidence that the losses were his and not those of the partnership. It is true that when the advances were made to Brick Company the money actually came out of the partnership bank accounts. If, as respondent argues, these advances had simply been made from partnership assets, and the losses had been taken in the partnership, and the partnership had reported the losses, it would be clear that the losses were partnership losses. If the record herein contained only the fact that the partnership books and records show that the partnership initially made the advances, then respondent would have support for his position that the losses are attributable to the partnership. But the record does not end at that point. It further shows that the losses were adjusted out of the partnership *241 books and charged to petitioner's drawing account, and were not charged to business losses, bad debts or any other partnership expense or loss account. This is corroborated by the uncontroverted and believable testimony of both petitioner and the partnership's accountant. In addition, various notes evidencing advances made to Brick Company were payable to petitioner and not to the partnership. And the petitioner repaid to the partnership all the advances made to Brick Company through the partnership. Accordingly, we hold for petitioner on the disputed issue. But to reflect the agreements and concessions of the parties on other issues, Decision will be entered under Rule 50.